# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANNETTE JONES,                          )   Case No. CV 10-0168 JCG
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )   **MEMORANDUM OPINION AND**
                                        )   **ORDER**
MICHAEL J. ASTRUE,                       )
COMMISSIONER OF SOCIAL                   )
SECURITY ADMINISTRATION,                 )
                                        )
            Defendant.                   )
_____          )

# I.

## INTRODUCTION AND SUMMARY

On January 19, 2010, plaintiff Annette Jones ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits ("SSI").  [Docket No. 3.]

On March 22, 2010, Defendant filed his answer, along with a certified copy of the administrative record.  [Docket Nos. 11, 12.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge.  [Docket No. 13.]  Both Plaintiff and Defendant

1  subsequently consented to proceed for all purposes before the Magistrate Judge
2  pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 14, 15.]

3      Pursuant to a January 20, 2010 order regarding further proceedings, Plaintiff
4  submitted a brief in support of her complaint ("Plaintiff's Brief") on April 23, 2010.
5  [Docket No. 16.]  On May 12, 2010, Defendant submitted his opposition brief
6  ("Defendant's Brief").  [Docket No. 19.]  On May 19, 2010, Plaintiff submitted her
7  reply ("Reply").  [Docket No. 20.]  The Court deems the matter suitable for
8  adjudication without oral argument.

9      In sum, having carefully studied, *inter alia*, the parties' written submissions
10  and the administrative record, the Court concludes that, as detailed below, there is
11  substantial evidence in the record, taken as a whole, to support the decision of the
12  Administrative Law Judge ("ALJ").  Thus, the Court affirms the Commissioner's
13  decision denying benefits.

14                                    **II.**

15                **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

16      Plaintiff, who was 44 years old on the date of her administrative hearing, has a
17  high school education and vocational training in cosmetology.  (*See* Administrative
18  Record ("AR") at 18, 143, 174-75.)  Her past relevant work includes employment as
19  a hair stylist, in-home health aide, home companion, and a hand packager.  (*Id.* at 14,
20  35-36.)

21      On September 22, 2006, Plaintiff protectively filed for SSI, alleging that she
22  has been disabled since June 1, 2002 due to arthritis and depression.  (*See* AR at 8,
23  143, 165, 170.)  Plaintiff's application was denied initially and upon reconsideration,
24  after which she filed a timely request for a hearing.  (*Id.* at 55, 56, 66, 72.)

25      On August 12, 2009, Plaintiff, represented by counsel, appeared and testified
26  at a hearing before an ALJ.  (*See* AR at 18-38.)  Elizabeth Cerezo-Donnelly, a
27  vocational expert ("VE"), also testified.  (*See id.* at 8, 35-37.)

28      On September 15, 2009, the ALJ denied Plaintiff's request for benefits.  (AR

1  at 8-15.)  Applying the five-step sequential evaluation process – which is discussed
2  below – the ALJ found, at step one, that Plaintiff has not engaged in substantial
3  gainful activity since her SSI application date.[1]  (*Id.* at 10.)

4      At step two, the ALJ found that Plaintiff suffers from a severe impairment
5  consisting of "facet arthropathy at L5-S1 of the lumbar spine."  (*Id.* at 11 (emphasis
6  omitted).)

7      At step three, the ALJ determined that the evidence did not demonstrate that
8  Plaintiff's impairment, either individually or in combination, met or medically
9  equaled the severity of any listing set forth in the Social Security regulations.[2]  (AR
10  at 11.)

11      The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and
12  determined that she can "lift and carry 50 pounds occasionally and 25 pounds
13  frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour
14  workday, occasional stooping, bending and crouching, and avoidance of
15  concentrated exposure to extreme temperatures."  (AR at 11 (emphasis omitted).)

16      The ALJ found, at step four, that Plaintiff retained the ability to perform her

17  _____

18  [1]  Plaintiff previously applied for SSI in 2004.  (*See* AR at 8.)  However,
    Plaintiff's application was denied initially and upon reconsideration, and a request
19  for review was denied by the Appeals Council on July 28, 2006.  (*Id.*)  Plaintiff did
    not appeal the denial by the Appeals Council.  (*Id.*)  At the August 12, 2009 hearing,
20  Plaintiff's counsel did not seek to reopen the prior application.  (*Id.* at 22, 24.)
21      Plaintiff also filed a prior application for SSI in 2003, which is not relevant to
22  the instant action.  (AR at 8.)

23  [2]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.
24
25  [3]  Residual functional capacity is what a claimant can still do despite existing
    exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
26  n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
    ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
27  residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th
    Cir. 2007).
28

3

1    past relevant work as a hair stylist, home companion, hand packager, and in-home

2    health aide.  (AR at 14-15.)  Thus, the ALJ concluded that Plaintiff was not suffering

3    from a disability as defined by the Act.  (*Id.* at 15.)

4         Plaintiff filed a timely request for review of the ALJ's decision, which was

5    denied by the Appeals Council.  (AR at 1-3, 4.)  The ALJ's decision stands as the

6    final decision of the Commissioner.

7                                  **III.**

8                        **APPLICABLE LEGAL STANDARDS**

9         A.    <u>Five-Step Inquiry to Ascertain a Cognizable Disability</u>

10        A claimant must satisfy three fundamental elements to be eligible for

11   disability benefits:  (1) a medically-determinable impairment; (2) the impairment

12   prevents the claimant from engaging in substantial gainful activity; and (3) the

13   impairment is expected to result in death or to last for a continuous period of at least

14   12 months.  42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

15   Cir. 1999).  A well-established five-step sequential inquiry is utilized to assess

16   whether a particular claimant satisfies these three elements.  The inquiry proceeds as

17   follows:

18        <u>First</u>, is the claimant engaging in substantial gainful activity?  If so, the

19   claimant cannot be considered disabled.

20        <u>Second</u>, does the claimant suffer from a "severe" impairment, *to wit*, one

21   continuously lasting at least 12 months?  If not, the claimant is not disabled.

22        <u>Third</u>, does the claimant's impairment or combination of impairments meet or

23   equal an impairment specifically identified as a disability by the Commissioner

24   under 20 C.F.R. part 404, subpart P, appendix 1?  If so, the claimant is automatically

25   determined to be disabled.

26        <u>Fourth</u>, is the claimant capable of performing his past work?  If so, the

27   claimant is not disabled.

28        <u>Fifth</u>, does the claimant have the so-called "residual functional capacity" to

4

1  perform some other type of work?  The critical question posed here is whether the

2  claimant can, in light of the impairment and his or her age, education and work

3  experience, adjust to another form of gainful employment?

4  　　　If a claimant is found "disabled" or "not disabled" along any of these steps,

5  there is no need to complete the remaining inquiry.  20 C.F.R. §§ 404.1520(a)(4) &

6  416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

7  　　　B.　　Standard of Review on Appeal

8  　　　This Court is empowered to review decisions by the Commissioner to deny

9  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

10  Administration must be upheld if they are free of legal error and supported by

11  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

12  *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings

13  are based on legal error or are not supported by substantial evidence in the record,

14  the court may reject the findings and set aside the decision to deny benefits.

15  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

16  242 F.3d 1144, 1147 (9th Cir. 2001).

17  　　　"Substantial evidence is more than a mere scintilla, but less than a

18  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

19  evidence which a reasonable person might accept as adequate to support a

20  conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

21  at 459.  To determine whether substantial evidence supports the ALJ's finding, the

22  reviewing court must review the administrative record as a whole, "weighing both

23  the evidence that supports and the evidence that detracts from the ALJ's

24  conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

25  simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d

26  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

27  evidence can reasonably support either affirming or reversing the ALJ's decision,

28  the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

(quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

### ISSUES PRESENTED

Five disputed issues are presented for decision here:

1.      whether the ALJ improperly evaluated Plaintiff's treating physician's opinion regarding the side effects of prescribed medication, (*see* Pl.'s Br. at 2-3; Reply at 1-2);

2.      whether the ALJ properly considered Plaintiff's testimony regarding her medication's side effects, (Pl.'s Br. at 3-5; Reply at 2-3);

3.      whether the ALJ failed to properly evaluate the dosage and side effects of Plaintiff's medication, (Pl.'s Br. at 5-6);

4.      whether the ALJ improperly discounted a lay witness's statements, (Pl.'s Br. at 8-9; Reply at 4); and

5.      whether the hypothetical question presented to the VE by the ALJ was inchoate.  (Pl.'s Br. at 6-8; Reply at 3-4.)

The Court addresses each argument in turn.

## V.

### DISCUSSION AND ANALYSIS

A. Evaluation of the Medical Evidence

Plaintiff contends that the "ALJ erred in failing to consider the treating physician's opinion regarding medication side effects Plaintiff experienced."  (Pl.'s Br. at 2.)  In particular, Plaintiff argues that "the ALJ disregarded without explanation the doctor's opinion regarding the drowsiness side effect caused by the prescribed Vicodin medication without providing specific and legitimate reasons, supported by substantial evidence."  (*Id.* at 3.)  The Court disagrees.

1                 1.    <u>The ALJ Must Provide Specific and Legitimate Reasons</u>

2                       <u>Supported by Substantial Evidence to Reject a Treating</u>

3                       <u>Physician's Opinion</u>

4       In evaluating medical opinions, Ninth Circuit case law and Social Security

5 regulations "distinguish among the opinions of three types of physicians: (1) those

6 who treat the claimant (treating physicians); (2) those who examine but do not treat

7 the claimant (examining physicians); and (3) those who neither examine nor treat the

8 claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

9 1995, *as amended* April 9, 1996); *see also* 20 C.F.R. §§ 404.1527(d) & 416.927(d)

10 (prescribing the respective weight to be given the opinion of treating sources and

11 examining sources). "As a general rule, more weight should be given to the opinion

12 of a treating source than to the opinion of doctors who do not treat the claimant."

13 *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030,

14 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure

15 and has a greater opportunity to know and observe the patient as an individual."

16 *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

17       "The opinion of an examining physician is, in turn, entitled to greater weight

18 than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830; *see also* 20

19 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). If the opinion of an examining

20 physician is rejected in favor of the opinion of a nonexamining physician, the ALJ

21 may do so only by providing specific and legitimate reasons. *Lester*, 81 F.3d at 830-

22 31. The ALJ can meet the requisite specific and legitimate standard "by setting out a

23 detailed and thorough summary of the facts and conflicting clinical evidence, stating

24 his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d

25 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

26                 2.    <u>Medical Evidence</u>

27       Here, on December 11, 2006, Rajeswari Kumar, M.D. ("Dr. Kumar")

28 performed a complete orthopedic evaluation of Plaintiff. (AR at 414-19.) Dr.

Kumar stated that Plaintiff has a "history of neck pain, mid back pain, lower back pain, and bilateral upper extremity and lower extremity joint pains." (*Id.* at 414.) Dr. Kumar indicated that Plaintiff's medications include "Motrin, Zantac, sleeping medication, Fosamax, and Vicodin." (*Id.* at 415.)

In making his evaluation, Dr. Kumar performed an independent physical examination and reviewed x-rays of Plaintiff's spine. (AR at 415, 418.) Dr. Kumar found "no spinous process or paraspinal tenderness" in Plaintiff's neck, but did find "tenderness in the lumbar paraspinal region." (*Id.* at 416.) Dr. Kumar determined that Plaintiff "can lift and carry 50 pounds occasionally and 25 pounds frequently. [Plaintiff] can do occasional bending and stooping activities. Standing and walking is six hours per day with routine breaks. Sitting is eight hours per day with routine breaks." (*Id.* at 418.)

In 2007 and 2008, Natividad De Jesus, M.D. ("Dr. De Jesus") treated Plaintiff on approximately five separate occasions. (*See* AR at 454, 455, 471.) The results were as follows:

On November 8, 2007, Dr. De Jesus indicated Plaintiff suffered from "severe back pain" and "abdominal pain." (AR at 454.) Dr. De Jesus diagnosed Plaintiff with "acid reflux" and prescribed Prevacid. (*Id.*) An x-ray imaging report, dated November 9, 2007 and requested by Dr. De Jesus, indicated "[m]ild scoliosis" and "[n]o fractures or destructive lesions." (*Id.* at 456.)

On November 19, 2007, about two weeks later, Dr. De Jesus found Plaintiff's neck was "non remarkable," but reported Plaintiff's stomach, legs and back "hurt." (AR at 454.)

On January 17, 2008, two months later, Dr. De Jesus noted Plaintiff suffered from "nausea" and "abdominal pain." (AR at 455.)

On February 11, 2008, Dr. De Jesus completed a "Medical Opinion Re: Ability To Do Work-Related Activities" form. (*See* AR at 477-79.) In the form, Dr. De Jesus opined that Plaintiff should be limited to lifting and carrying 20 pounds on

8

an occasional basis and 25 pounds on a frequent basis in an eight-hour work day. (*Id.* at 477.)  He also found that Plaintiff had the ability to stand and walk approximately three hours and sit for approximately two hours in an eight-hour work day.  (*Id.*)  Dr. De Jesus noted that Plaintiff would need to "lie down at unpredictable intervals during a work shift" due to side effects from Vicodin, which causes Plaintiff to be drowsy.  (*Id.* at 478.)

On October 16, 2008, eight months later, Dr. De Jesus indicated Plaintiff suffered from arthritis in her hands.  (AR at 471.)

On November 12, 2008, Dr. De Jesus reported Plaintiff complained of nausea. (AR at 471.)

### 3. The ALJ's Analysis of Dr. De Jesus' Opinion

The ALJ rejected Dr. De Jesus' opinion, finding that it was "not supported by any objective findings and is not consistent with the medical evidence of record." The ALJ's entire finding is quoted for the requisite context:

> [Plaintiff] saw Dr. De Jesus for only several visits over a two year period and x-rays of the lumbar spine in November 2007 showed only mild scoliosis with no other abnormalities.  The left hip x-rays were negative, as was the laboratory workup.  The lumbar spine x-rays taken at the orthopedic consultative examination showed facet arthropathy at L5-S1, but the disc spaces were intact and the examination showed only limited range of motion of the lumbar spine with no signs of lumbar radiculopathy.  There is no evidence of gait disturbance or need for use of an assistive device for ambulation.  The orthopedic consultative examination showed no objective abnormalities of the joints of the upper or lower extremities.  [Plaintiff] alleges a history of osteoporosis, but there is no evidence of bone fracture. . . . ¶ The undersigned gives weight to the assessments from the

1    orthopedic consultative examiner and Disability Determination
2    Services medical consultants because they are consistent with the
3    evidence discussed above.

4  (AR at 13.)

5          4.    The ALJ Properly Evaluated Dr. De Jesus' Opinion

6        The Court is persuaded that the ALJ properly rejected Dr. De Jesus' opinion.
7  First, the ALJ relied on Dr. Kumar's opinion.  An examining physician's opinion
8  may constitute substantial evidence if the "nontreating physician relies on
9  independent clinical findings that differ from the findings of the treating physician."
10 *Magallanes*, 881 F.2d at 751 (internal citation omitted).  Here, the record reveals that
11 Dr. Kumar conducted an extensive and independent examination of Plaintiff.  (*See*
12 AR at 414-19.)  Dr. Kumar relied on x-rays, Plaintiff's medical history, and his own
13 observations to evaluate Plaintiff's impairments.  (*See id.*)  As such, Dr. Kumar's
14 opinion, which was based on specific objective evidence in the record, constitutes
15 substantial evidence.

16       Second, the ALJ rejected Dr. De Jesus' opinion because it was not supported
17 by the medical evidence.  For example, the ALJ rejected Dr. De Jesus' opinion
18 because "x-rays of the lumbar spine in November 2007 showed only mild scoliosis
19 with no other abnormalities."  (AR at 13.)  The Court is persuaded that substantial
20 evidence supports the ALJ's rejection of Dr. De Jesus' opinion based on a lack of
21 objective medical evidence.  (*See, e.g., id.* at 249 (imaging report dated June 2, 2005
22 and reviewed by Dr. De Jesus indicating "[d]iffuse osteopenia,"[4] "unremarkable"
23 vertebral bodies and disc spaces, and normal alignment), 363 (imaging report dated
24 July 31, 2005 finding "cervical vertebrae are normally aligned," "disc spaces are
25 maintained," and "spinous processes are within normal limits"), 456 (imaging report

26

27    [4]   Osteopenia is "[d]ecreased calcification or density of bone[.]"  *Stedman's*
28 *Medical Dictionary* 1391 (28th ed. 2006).

1  dated November 8, 2007 reporting mild scoliosis, and vertebral bodies and discs are

2  normal in height).)

3       As explained by the ALJ, Dr. De Jesus' opinion, which is brief and

4  conclusory, is based on a handful of visits over a two-year span.  Where, as in this

5  case, the doctor's notes are cursory and lacking in substantial clinical support, the

6  ALJ may discredit them.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195

7  (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory,

8  brief, and unsupported by the record as a whole, or by objective medical findings).

9       Third, Plaintiff does not challenge the ALJ's rejection of the other portions of

10  Dr. De Jesus' opinion.  Instead, Plaintiff only alleges that "the ALJ disregarded

11  without explanation the doctor's opinion regarding the drowsiness side effect caused

12  by the prescribed Vicodin medication without providing specific and legitimate

13  reasons, supported by substantial evidence."  (Pl.'s Br. at 3.)  However, Plaintiff

14  fails to point to, and the Court could not locate, any evidence in the record

15  suggesting that Plaintiff complained to Dr. De Jesus that she was suffering from

16  drowsiness from Vicodin or any other medication.  (*See generally* AR at 1-503.)

17       While there is evidence that Plaintiff reported possible side effects of

18  abdominal pain and nausea to him, Dr. De Jesus did not opine that such side effects

19  would affect her ability to work.  *See Erickson v. Shalala,* 9 F.3d 813, 817 (9th Cir.

20  1993) ("The ALJ must consider *all factors* that might have a significant impact on

21  an individual's ability to work.") (internal quotation marks and citation omitted)

22  (emphasis in original).  As such, the Court finds any error the ALJ may have

23  committed – in failing to explicitly reject Dr. De Jesus' opinion regarding side

24  effects – is harmless.

25       B.    Plaintiff's Credibility

26       Plaintiff argues that the "ALJ erroneously discredited Plaintiff's Pain

27  Questionnaire statements and testimony regarding medication side effects.

28  Plaintiff's drowsiness side effect, as well as the other reported side effects, are

consistent with the expected side effects of the medication.  The ALJ's credibility determination is not supported by the record evidence."  (Pl.'s Br. at 5.)  Plaintiff's argument is wanting.

### 1.   The ALJ Must Provide Clear and Convincing Reasons For Discounting Plaintiff's Subjective Complaints

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so.  *Benton*, 331 F.3d at 1040.  The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering.  (*See generally* AR at 8-15.)  So, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons.  *See Benton*, 331 F.3d at 1040.

### 2.   Plaintiff's Subjective Complaints

The Court first carefully reviews Plaintiff's various complaints.

On October 6, 2006, Plaintiff completed an Adult Function Report form.  (AR at 178-85.)  In the form, Plaintiff stated that she is able to drive, but "tr[ies] not to go anywhere because of [her] health."  (*Id.* at 179.)  In terms of daily activities, Plaintiff mentioned that she is able to swim "two times out of a week."  (*Id.* at 182.)  Plaintiff also stated that she "can[']t hold [her] arms up long enough to do [her] hair[, so her] daughter helps [her] put it in a pony tail."  (*Id.* at 179.)

On January 25, 2007, Plaintiff completed a Disability Report form and indicated that her medication "keeps [her] drow[sy]."  (AR at 196.)

On May 13, 2007, Plaintiff completed a Pain Questionnaire form and stated

1  that her medication causes "dizz[i]ness, drowsiness." (AR at 207-09.)

2  On May 14, 2007, Plaintiff completed an Exertional Daily Activities

3  Questionnaire form. (AR at 210-12.) In the form, Plaintiff stated that the

4  "medication I take on a daily basis causes me stomach upsets, nauseation,

5  headaches, dizziness." (*Id.* at 210.) Plaintiff further stated that she is unable to walk

6  because her knees and legs are "always in pain" and she can "lift nothing over 10

7  pounds." (*Id.* at 210-11.)

8  At the administrative hearing, Plaintiff testified that she was working as a

9  caretaker, but stopped working on September 15, 2008. (*See* AR at 22-23.) Plaintiff

10  testified that she stopped working "[b]ecause [of her] body pains that [she] was

11  developing every day[,]" but had been "forcing [her]self to work." (*Id.* at 23.) The

12  following *notable* exchange then occurred between the ALJ and Plaintiff:

13  [ALJ:]          Were you taking care of one person or many people?

14  [Plaintiff:]    Just one.

15  [ALJ:]          What happened to that person?

16  [Plaintiff:]    She moved to LA.

17  [ALJ:]          About the same time as you stopped working for

18                  her?

19  [Plaintiff:]    Uh-huh. Uh-huh.

20  [ALJ:]          Okay. Would it be fair, then, to conclude that had

21                  she not moved to LA you'd have continued to take

22                  care of her?

23  [Plaintiff:]    Well, I was going to quit anyway because of my

24                  own symptoms.

25  (*Id.* at 23.)

26  Plaintiff further testified that she "feel[s] dizziness sometime, nauseation in

27  the stomach, acid reflux in the middle of [her] chest" due to the side effects of her

28  medications. (AR at 31.)

Plaintiff also testified that she also suffers from "a lot of depression" which prevents her from working.  (AR at 31.)  When asked when she was diagnosed, Plaintiff responded, "I think 2007."  (*Id.*)  Plaintiff reported that "[t]hey gave me so many medicines, sleeping pills, all that, I couldn't even keep up with half of the stuff they give me [for depression]."  (*Id.* at 32.)  She stated, "I don't even know the name of it."  (*Id.*)

### 3.   The ALJ's Analysis of Plaintiff's Subjective Complaints

In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "subjective complaints and alleged limitations are out of proportion to the objective findings[.]" (AR at 14.)  Specifically, the ALJ explained:

> There is no evidence of disuse muscle atrophy that would be compatible with [Plaintiff's] alleged level of inactivity.
>
> [Plaintiff's] subjective complaints and alleged limitations are not consistent with the treatment she receives.  [Plaintiff] has had only several follow up visits with Dr. De Jesus over a two-year period.  She has not received workup or treatment with the appropriate specialists for her arthralgias.  The record does not substantiate [Plaintiff's] allegation of adverse medication side effects.  [Plaintiff] has not received mental health treatment and she does not take psychiatric medications.  It is reasonable to assume that if [Plaintiff] were experiencing the disabling problems alleged, she would have received more aggressive treatment.
>
> [Plaintiff] attempted to be misleading about her work activity at the hearing.  When the undersigned confronted [Plaintiff] about her income of $7,819 in 2007 from in home support services, [Plaintiff] said that it ended on September 15, 2008.  The undersigned then asked why she stopped doing this

1       work.  [Plaintiff] responded that she quit due to pains.  The

2       undersigned asked what happened to the woman she cared for.

3       Only then did [Plaintiff] admit that the woman moved away.

4    (*Id.*)

5       4.    The ALJ Properly Rejected Plaintiff's Subjective Complaints

6    On this record, the Court is persuaded that the ALJ provided clear and

7    convincing reasons for rejecting Plaintiff's credibility.

8    First, although Plaintiff complained of debilitating pain caused by arthritis,

9    (*see, e.g.,* AR at 3-30), the ALJ noted the lack of medical evidence to support such

10   extreme limitations.  (*See id.* at 14); *see also Batson*, 359 F.3d at 1197 (the "lack of

11   objective medical evidence supporting [claimant's] claims . . . constitute[s]

12   substantial evidence in support of the ALJ's negative credibility determination");

13   *Thomas*, 278 F.3d at 959 (lack of objective medical evidence supporting descriptions

14   of pain and limitations negatively affected claimant's credibility regarding her

15   inability to work).

16   Second, the ALJ properly rejected Plaintiff's credibility based on ordinary

17   techniques of trustworthiness determination, such as contradictions between

18   Plaintiff's testimony and her conduct.  (*See* AR at 14); *see also Thomas*, 278 F.3d at

19   958-59.  The ALJ noted that despite Plaintiff's allegations of debilitating pain,

20   Plaintiff only sought treatment from Dr. De Jesus "several" times "over a two-year

21   period."  (AR at 14.)  Plaintiff's failure to seek treatment casts doubt on the

22   credibility of her claim of functionally disabling pain.  *See Fair v. Bowen*, 885 F.2d

23   597, 603 (9th Cir. 1989) (an ALJ may rely upon a plaintiff's "unexplained, or

24   inadequately explained, failure to seek treatment" as a proper basis to reject

25   plaintiff's credibility).

26   Indeed, although Plaintiff testified that she suffers from "a lot of depression,"

27   (AR at 31), there is no evidence in the medical record that she sought mental health

28   treatment, was diagnosed with depression or was prescribed any depression

medication.  Even a gossamer of depression fails to exist here.  (*See generally id.* at 1-503; *see also id.* at 404 (November 14, 2006 complete psychiatric evaluation report, performed at request of Social Security Administration, indicating that Plaintiff stated to evaluating psychiatrist that she "has never seen a psychiatrist" and "is not under any psychiatric treatment" and "is currently not taking any psychiatric medication").)

Third, the Court finds that the ALJ's rejection of Plaintiff's credibility because he determined that she "attempted to be misleading about her work activity at the hearing" is a clear and convincing reason.  Plaintiff stated that she quit her position as a caretaker due to pain.  Plaintiff was not forthright with the ALJ, however.  Plaintiff failed to disclose, until she was directly questioned, that her employment as a caretaker was terminated due to the relocation of the woman that was in her care.  (*See* AR at 23.)

Accordingly, substantial evidence supports the ALJ's credibility determination because the ALJ provided clear and convincing reasons for finding Plaintiff unbelievable.

Finally, the Court notes that Plaintiff again does not contest the ALJ's overall credibility finding.  (*See* Pl's Br. at 4-5.)  Plaintiff claims that there is substantial evidence supporting her reports of suffering from side effects.  While Plaintiff claims that the ALJ erred in rejecting her complaints of "dizziness, drowsiness, and upset stomach," the focus of her argument is that she feels drowsy from Vicodin.  (*See id.*)  However, as previously explained, Plaintiff points to no evidence in the medical record to support this assertion, *i.e.*, that she ever told any treating or examining physician that her medication caused her to feel drowsy.  (*See generally id.*; Reply at 2-3.)  Thus, the ALJ did not err in rejecting Plaintiff's statements that she suffers from drowsiness caused by Vicodin.

     C.     <u>Consideration of the Type, Dosage, Effectiveness and Side Effects of Plaintiff's Medication</u>

Plaintiff contends that the "ALJ erred in failing to comply with [Social Security Ruling 96-7p] by not properly evaluating the dosage and side effects of Plaintiff's medication" and pertinaciously clings to Dr. De Jesus' opinion and Plaintiff's statements regarding side effects from medications in support of her argument. (Pl.'s Br. at 5.) Plaintiff's claim is untenable.

      1.    <u>The ALJ Must Consider Type, Dosage, Effectiveness, and Side Effects of Medication Only If Side Effects Have Significant Impact on Ability to Work</u>

Pursuant to Social Security Ruling ("SSR") 96-7p,[5] 1996 WL 374186, at *3, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider those medication side effects that have a "significant impact on an individual's ability to work." *Erickson*, 9 F.3d at 817-18 (internal quotation marks and citation omitted). The "claimant bears the burden of proving that a medication's side effects are disabling." *Short v. Astrue*, 648 F. Supp. 2d 1185, 1191 (C.D. Cal. 2009).

The ALJ is not obligated to consider a claimant's allegations of side effects when the claimant has "provided no evidence to support this claim other than a statement in his daily activities questionnaire." *Hopkins v. Astrue*, 227 Fed. Appx. 656, 657 (9th Cir. 2007). This is so because "'a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings.'" *Id.* (quoting *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). Even "passing

---

[5] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

1  mentions of side effects" in some medical records would be insufficient in the
2  absence of evidence of side effects "severe enough to interfere with [a claimant's]
3  ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001).

4          2.   The ALJ Did Not Fail to Properly Consider the Side Effects of
5               Plaintiff's Medication

6          Here, the Court concludes that the ALJ did not fail to properly consider the
7  side effects of Plaintiff's medication.  Three reasons guide the Court's
8  determination.

9          First, the only evidence in the record to support Plaintiff's contention are
10 statements from her own testimony and the forms Plaintiff completed, *i.e.*, her own
11 Disability Report, Pain Questionnaire, and Daily Activities Form.  (*See* AR at 31,
12 196, 208, 210.)  Even assuming *arguendo* that such evidence would be sufficient to
13 satisfy Plaintiff's burden that her side effects are disabling, the ALJ rightly found
14 Plaintiff's testimony and statements cannot be credited.  *See supra* § V(B)(4).

15         Second, Plaintiff cites Dr. De Jesus' opinion that Plaintiff "would need to lie
16 down at unpredictable intervals during a work shift" because of the drowsiness
17 caused by Vicodin, (*see* Pl.'s Br. at 5), but as explained *supra* § V(A)(4), the ALJ
18 properly rejected Dr. De Jesus' opinion.

19         Third, Plaintiff fails to identify, and the Court again could not locate, a single
20 instance in the medical record where Plaintiff complained of feeling drowsy, dizzy,
21 or suffering from headaches to a treating or examining physician.  Apart from
22 drowsiness, Dr. De Jesus did not opine any additional functional limitations
23 resulting from adverse side effects, *i.e.*, limitations from upset stomach or nausea, or
24 that any such side effects are severe enough to interfere with Plaintiff's ability to
25 work.  (*See generally* AR at 477-79.)  Plaintiff fails to meet her burden to
26 demonstrate that her medication side effects of upset stomach, nausea, headache, or
27 dizziness, (*see id.* at 210), are severe enough to interfere with her ability to work.
28 *Osenbrock*, 240 F.3d at 1164.  Thus, no reversible error can be found based on the

18

1  ALJ's asserted failure to consider the type, dosage, and side effects of Plaintiff's
2  medications.

3        D.      <u>Lay Witness Statements</u>

4        Plaintiff contends that the ALJ failed to properly consider the lay witness
5  statements of Eric Eolst ("Mr. Eolst"), Plaintiff's adult son.  (Pl.'s Br. at 8-9.)
6  Plaintiff maintains that "the ALJ failed to discuss any of the lay witness's actual
7  statements or articulate with specificity the statements he found to be inconsistent
8  with the objective findings and record evidence" and the "ALJ's conclusory remarks
9  . . . do not satisfy the ALJ's duty to provide germane reasons for rejecting lay
10  witness testimony."  (*Id.* at 9.)

11        1.      <u>The ALJ Must Provide Reasons Germane to Lay Witness to</u>
12                    <u>Discount Such Statements</u>

13        "[L]ay testimony as to a claimant's symptoms or how an impairment affects
14  ability to work *is* competent evidence and therefore *cannot* be disregarded without
15  comment."  *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal
16  quotation marks, ellipses and citation omitted) (italics in original); *see Smolen v.*
17  *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1513(d)(4)
18  (explaining that Commissioner will consider evidence from "non-medical
19  sources[,]" including "spouses, parents and other caregivers, siblings, other relatives,
20  friends, neighbors, and clergy[,]" in determining how a claimant's impairments
21  affect his or her ability to work) & 416.913(d)(4) (same).

22        The ALJ may only discount the testimony of lay witnesses if he provides
23  specific "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915,
24  919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay
25  testimony as to a claimant's symptoms is competent evidence that an ALJ must take
26  into account, unless he or she expressly determines to disregard such testimony and
27  gives reasons germane to each witness for doing so.").

28        Finally, "where the ALJ's error lies in a failure to properly discuss competent

1   lay testimony favorable to the claimant, a reviewing court cannot consider the error

2   harmless unless it can confidently conclude that no reasonable ALJ, when fully

3   crediting the testimony, could have reached a different disability determination."

4   *Stout*, 454 F.3d at 1056.

5   2.   Third Party Report

6   In this case, on October 6, 2006, Mr. Eolst completed a Third Party Function

7   Report on behalf of his mother.  (*See* AR at 187-93.)  In the report, Mr. Eolst stated

8   that he "help[s his] mom when she needs [him]."  (*Id.* at 187.)  In describing

9   Plaintiff's daily activities, Mr. Eolst stated that when Plaintiff is "not in pain," she is

10  able to "cook" for her children and prepares food, such as a "sandwich" or "frozen

11  dinners."  (*Id.* at 188-89.)  Mr. Eolst also indicated that Plaintiff is able to do very

12  little "cleaning, laundry, ironing."  (*Id.* at 189.)

13  In the report, Mr. Eolst stated that Plaintiff is able to grocery shop or attend

14  church when "she[']s not in pain."  (AR at 190.)  Further, he reported that Plaintiff

15  swims twice a week.  (*Id.* at 191.)  He estimated that "she could probably lift 25

16  pound[s], walking not to[o] far [and] standing not to[o] long."  (*Id.* at 192.)

17  3.   The ALJ's Analysis of the Third Party Report

18  With respect to Mr. Eolst's Third Party Report, the ALJ stated as follows:

19  The undersigned has considered the allegations in the third

20  party function report from [Plaintiff's] son, but the undersigned

21  does not find any additional limitations based on the allegations

22  therein because they are not consistent with the objective

23  findings, [Plaintiff's] treatment, or [Plaintiff's] work activity after

24  the alleged onset date, as discussed above.

25  (AR at 14.)

26  4.   The ALJ Did Not Err in Rejecting the Third Party Report

27  The Court finds that the ALJ correctly rejected Mr. Eolst's statements.

28  Here, the ALJ rejected Mr. Eolst's statements to the extent that they were

20

1   inconsistent with Plaintiff's treatment, work activity, and the objective medical

2   evidence of record.  "One [germane] reason for which an ALJ may discount lay

3   witness testimony is that it conflicts with medical evidence."  *Lewis*, 236 F.3d at

4   511; *Pallas v. Astrue*, 246 Fed. Appx. 426, 428 (9th Cir. 2007) (finding ALJ

5   properly rejected lay witness report where medical evidence contradicted lay

6   witness's statements).  As discussed *supra* § V(A)(4), there is no objective medical

7   evidence in the record to support Mr. Eolst's statements as to Plaintiff's level of

8   pain.  Thus, the ALJ's rejection of Mr. Eolst's statements is supported by substantial

9   evidence and was not error.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

10  2005) (inconsistency with medical evidence is a germane reason for discrediting the

11  testimony of a lay witness).

12       E.       Vocational Expert Hypothetical

13       Plaintiff lastly contends that the "ALJ erroneously omitted Dr. De Jesus'

14  findings from the hypothetical questions posed to the VE" and "failed to mention Dr.

15  De Jesus' opinion that Plaintiff's Vicodin medication caused drowsiness, that she

16  would need to lie down at unpredictable intervals during a work shift, and that she

17  should not operate machinery or drive."  (Pl.'s Br. at 7.)

18       The ALJ may rely on testimony a vocational expert gives in response to a

19  hypothetical that contains "all of the limitations that the ALJ found credible and

20  supported by substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217-18.  The

21  ALJ is not required to include limitations that are not in his findings.  *Rollins v.*

22  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock*, 240 F.3d at 1165.

23       Here, the ALJ did not err in omitting any functional limitations caused by

24  drowsiness because the ALJ properly discounted Dr. De Jesus' opinion and

25  Plaintiff's credibility.  *See Mancillas-Gutierrez v. Astrue*, 2009 WL 453059, at *6

26  (C.D. Cal. 2009) (where ALJ properly discounted claimant's credibility and

27  opinions of treating physicians, ALJ did not err in omitting limitations asserted by

28  claimant in posing hypothetical); *Thomas*, 278 F.3d at 959 (ALJ need not include

1    limitations derived from testimony ALJ determines is not credible in hypothetical

2    questions posed to a vocational expert).  In other words, because the Court finds that

3    there is substantial evidence in the record as a whole to support the ALJ's decision

4    to reject the limitations resulting from the side effects of Plaintiff's medications,

5    substantial evidence also supports the ALJ's decision to exclude these restrictions in

6    his hypotheticals to the VE.

7            Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

8    **AFFIRMING** the decision of the Commissioner denying benefits.

9

10   Dated: January 5, 2011                    _____

11                                             Hon. Jay C. Gandhi
                                               United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28